**In the Matter of WOMACK, INC., a Nevada Corporation, Bankrupt.**

**Bankruptcy No. BK–LV 75–387.**

United States Bankruptcy Court, D. Nevada.

Oct. 10, 1979.

Lawrence Allen, of Allen & Allen, Encino, Cal., for applicant, Fred Shragai, d/b/a Dale Investment Co.

Myron E. Leavitt, Las Vegas, Nev., for Trustee, Robert N. Broadbent.

Herschel C. Adcock, J. Glenn Dupree and E. Wade Shows, of Adcock, Dupree & Shows, Baton Rouge, La., for the Bankrupt & Special Counsel for Trustee, Robert N. Broadbent.

William R. Morse, of Morse & Foley, Las Vegas, Nev., for the Bankrupt.

W. Owen Nitz, of Nitz, Schofield & Nitz, Las Vegas, Nev., for secured creditors, Jake's Crane & Rigging, Inc. & Industrial Steel, Inc., and for unsecured creditors, Tony Marnell Co., Industrial Rebar, Toto Purchasing & Supply Co., Inc. & D. A. McClain, d/b/a McClain's Trenching.

Robert A. Wirth, of Jolley, Urga & Wirth, Las Vegas, Nev., for secured creditor, San Diego Prestressed Concrete Co.

John W. Bonner, Las Vegas, Nev., for secured creditor, Gary Guy Wilson.

Of the above counsel, all but Mr. Leavitt and the Trustee, himself, opposed the Application of Mr. Shragai for a broker's commission/finder's fee. The Trustee and his counsel took a middle ground, stating only that they felt that Mr. Shragai had performed according to his agreement with the Trustee and should be compensated in some form for his labors.

## MEMORANDUM OPINION

LLOYD D. GEORGE, Chief Judge.

The Court now has before it an Application for the award of some $75,000.00 as a finder's fee/broker's commission on the sale of certain real property forming the major, if not only, asset of the present Bankrupt's estate. At the hearing held with respect to this and other applications for compensation, Counsel for several of the creditors of Womack, Inc., objected to this claim, arguing that it was based upon an obligation which was unenforceable under Nevada law because of the failure of the Claimant, Fred Shragai, d/b/a Dale Investment Company, to possess a Nevada real estate broker's license at the time the sale was negotiated. Moreover, Counsel further maintained that the sum requested was far in excess of any reasonable compensation which Mr. Shragai could have anticipated from his labors, particularly in light of the relatively limited amount of funds which ended up in the Bankrupt's estate because of the sale. Counsel therefore asked that the Court disregard the Application of Mr. Shragai, insofar as it may be based upon any set percentage rate in respect to the purchase price of the Bankrupt's real property, and that Mr. Shragai be granted, at best, a reasonable return set in accordance with an hourly rate for the actual time spent by him in finding a buyer for the subject property. The overall figure of $15,000.00 was mentioned as a possible amount which might favorably repay Mr. Shragai for his endeavors.

In rebuttal, Counsel for the Applicant denied that the actions of his client were in contravention of Nevada law, asserting that although Mr. Shragai never held a Nevada real estate broker's license during this period, he also never did any of the acts specified as construing the conduct of a real estate broker under N.R.S. 645.030 within the boundaries of the state of Nevada. His actions as a broker, Counsel affirmed, all took place in the state of California where Mr. Shragai was duly licensed. In Nevada, it was argued, Mr. Shragai did no more than that which a common "finder" would do, which actions were said to fall outside the parameters of the Nevada real estate brokers' licensing statutes.

On the whole, the Court considers the location of Mr. Shragai's activities to be irrelevant in the present case. Section 645.-240(3)(b) of the Nevada Revised Statutes clearly excludes from the licensing requirements of that chapter, "(w)hile acting as such, a receiver, trustee in bankruptcy, administrator or executor, *or any person doing any of·the acts specified in NRS 645.030 under jurisdiction of any court.*" (Emphasis supplied). Counsel for San Diego Prestressed Concrete Company, a secured creditor of Womack, Inc., has ably argued that the last phrase of this exclusion must be read as referring only to persons who have been specifically ordered by the court to act in the fashion specified by N.R.S. 645.030. Nevertheless, he has cited no authority for this interpretation and the Court can find no authority of its own to lend in support of this position. On the other hand, it is quite obvious to the Court that the exclusion of such persons from the licensing requirements contained in that chapter is reflective of the general deference which the legislature wanted to show for those cases in which a court would be supervising the activities of an erstwhile real estate broker, thus greatly reducing the possibility of the type of harm which this statute was intended to prevent.

Throughout the course of these proceedings, the Court has been openly aware of the efforts of Mr. Shragai and others to find substantial buyers for the Womack property. All of the Counsel here involved have also witnessed this significant attempt to find a source for repaying many of their clients. While no order ever formally issued from this Court to authorize Mr. Shragai and his company to find a buyer, a deficiency which should perhaps be borne in mind in future cases, the Court cannot now justly assert that Mr. Shragai was not acting under its direction when he made the arrangements for the present sale. The Court finds that this direction is the effective equivalent of the "jurisdiction" spoken of in N.R.S. 645.240(3)(b) and that the Applicant must therefore be found excluded from the Nevada real estate brokers' licensing requirements with respect to his dealings in the present proceeding. Hence, the Court need only determine the amount of commission now owing the Applicant from the Womack estate.

As an argument in favor of granting his client the full amount of his request, Counsel for Mr. Shragai entreats the Court to consider the great value which has been done to the estate by the sale of the Womack property, noting that without this sale none of the creditors of Womack, Inc., except for Cameron-Brown Investment Group, would have received anything on the obligations owed them. Perhaps in an attempt to appeal to the equitable conscience of the Court, the Applicant himself further sets forth what he apparently perceives to have been a promise by Mr. Robert N. Broadbent, the Trustee herein, to the effect that in no instance would he receive less than five percent of the total sale price, or $75,000.00, as his commission.

The Court is not aware how Mr. Shragai may have come to believe that he would be paid $75,000.00 for his efforts, but the Court does know that from the outset of this matter neither the Applicant nor any other person who has come before this bench to sell the Womack property has been officially assured of any set amount for his or her endeavors. Moreover, Mr. Broadbent has also represented to the Court that he has never made any such promise, but has only given the Applicant estimates as to his possible commission, based upon what has

been paid in the past for similar sales. The Court is satisfied that this representation is truthful.

■ Relatively early in its dealings with Mr. Shragai and his buyer, the Court specifically delayed any determination of brokerage commissions until such time as the Court could adequately ascertain a reasonable compensation for the work done for and the benefit bestowed upon the present estate. The standard for determining this reasonableness consists of a number of factors which may include, but are not limited to 1) the commercial reasonableness of the fee, as seen in light of what would be paid in a transaction occurring in the open marketplace; 2) the amount to be found in the Bankrupt's estate from which such a payment can be made, 3) the amount of time and expense put into the project by the Claimant, 4) the amount brought into the estate by the sale, 5) the difficulty of finding a buyer for the property, and 6) the amount which might be left to pay off secured and general creditors after this and other administrative expenses are paid.

The Claimant has apparently only looked to the first of these factors in making his fee application. To be sure, the figure of five percent is undoubtedly typical of local brokerage fees for the sale of this type of real property. Nevertheless, the other variables laid out above must also be taken into account by this Court. In the present case, for example, the amount which will be left in this estate after the payment of all of the administrative expenses now being claimed will be far less than is necessary to repay secured creditors in full, let alone to permit any dividend at all to general creditors. From the standpoint of time spent by the Applicant, the Court can only mirror the thoughts of Counsel for San Diego Prestressed that the number of hours of work which the Applicant claims to have expended in this exercise (110 hours) would hardly merit the sort of return which is now being sought.

With respect to the expenses listed by the Applicant as having been paid in the pursuit of the present buyer, the Court is deeply troubled that perhaps Mr. Shragai or his

attorney has been led to believe that a broker's commission amounts less to compensation for services rendered than to a magic windfall for one fortunate enough to find a buyer for an expensive tract of land. Of the $20,486.40 figure found in the applicant's invoice of costs, some $4,320.00 is not for an out-of-pocket expense at all, but rather, it represents a theoretical "wage" of $30.00 per hour which Mr. Shragai deems that he should receive for consultations relating to the sale of the Womack property. Another $15,000.00 item on this invoice concerns a finder's fee obligation incurred by the Applicant to an entity known as Tiger Realty. At no time was this Court ever made aware that Mr. Shragai had entered into this agreement or that he would ever become obligated in this amount. Indeed, it is apparent that Mr. Shragai did not become indebted to Tiger Realty for the $15,000.00 sum until after the sale had been consummated. Prior to that time, only a nebulous understanding existed to the effect that Tiger Realty would receive some compensation for their endeavors.

This Court has never led Mr. Shragai to believe that he will even be paid the amount of $15,000.00 for his own services. The Court does not, therefore, feel obligated to consider this commitment—or Mr. Shragai's "wages"—in determining the amount due to him and to the Dale Investment Company from the Womack estate. Of much greater interest is the way in which the estate has been or will be benefitted by Mr. Shragai's activities with respect to the sale of the Womack property.

■ In the latter regard, the Court does note at this time that the sale did generate a better price than many suspected would be possible and that the efforts of Mr. Shragai did prove successful even though several other persons had previously failed to find a willing and able buyer within the timeframe demands placed by the major secured creditor of the project and by the Court. Balancing these positive factors against the rather minimal benefit which most of the Bankrupt's creditors will nevertheless enjoy because of this sale, the Court feels that a finder's fee/broker's commission in the amount of $30,000.00, inclusive

of the listed costs of Mr. Shragai, is fair in the present circumstances.

If Mr. Shragai's expectations, whether justified or not, have only been partially met by this award, the Court can do no more than console him with the reminder that this sum is much more than what many of the Womack creditors will be receiving, and also considerably more, on an hourly scale, than any of the attorneys herein are asking for their able services. Still, the sop is always bitterest to the one who most craves sweetness. But, it is at times imprudent to anticipate more than a mild satisfaction of one's pecuniary palate before a court in bankruptcy. This case is one such instance. While the Court certainly wishes that it could, in every case, reward both creditors and brokers to the full extent of their justifiable expectations, this is not always possible. Often, it can do nothing more than balance continuously inadequate equities in the hope of assuaging a few of the unpleasant economic realities of insolvency.

Counsel for the Trustee will prepare an appropriate order.