**In re CONCEPT CLUBS, INC., dba Studebakers, Mullboons, Inc., Bojo, Inc., dba Mullboons Restaurant (Midvale), Allen Hospitality, Inc., and Mullboons of Ogden; Administratively Consolidated Cases, Debtors.**

**Bankruptcy Nos. 89A–02750 to 89A–02754.**

United States Bankruptcy Court, Utah, C.D.

April 5, 1991.

George Speciale, Salt Lake City, Utah, for Concept Clubs, Inc., debtor.

William Thurman, Salt Lake City, Utah, for Wardley Corp.

Mark Howard, Sp. Asst. to U.S. Atty., Salt Lake City, Utah, for I.R.S.

Gregory Holbrook, Salt Lake City, Utah, for Capital City Bank.

Robert Merrill, Salt Lake City, Utah, for Booth Fisheries.

Harriet Styler, Salt Lake City, Utah, trustee.

Peter Kuhń, Salt Lake City, Utah, U.S. Trustee.

### MEMORANDUM OPINION

JOHN H. ALLEN, Bankruptcy Judge.

A hearing was held November 3, 1989, on the Verified Application of Broker for Debtor For Allowance of Compensation As An Administrative Expense. The matter was taken under advisement, and the Court now issues the following order.

On August 30, 1989, the Court authorized the sale of property of the estates of Bojo, Inc., Mullboons, Inc. and Mullboons of Ogden, Inc., to Hersh Ipaktchian for $1,000,000. The Order had no provision for payment of a sales commission.

An Order was signed September 19, 1989, authorizing the appointment of Ward-

ley Better Homes and Gardens (Wardley) as a professional for debtors Bojo, Inc., Mullboons, Inc. and Mullboons of Ogden (debtors). This Order provided that the commission and/or other fees of the professional would be fixed by the Court upon appropriate application after notice and hearing.

The Verified Application, filed September 28, 1989, requests a commission of 10% based on the sales of debtors' restaurant properties for $1,000,000. The application states that this percentage rate is customary for business sales. Accordingly, the applicant seeks a commission of $100,000.

Several creditors and the United States Trustee have objected to the application maintaining that the sum requested is far in excess of any reasonable compensation. Affidavits accompanying the objections indicate that reasonable compensation for the brokerage of a business should be no more than 5%, with a range which may start as low as 2%.

The Examiner's Report (Exhibit # 1) discloses that prior to the bankruptcy petitions being filed, Wardley represented the purchaser of the properties, Hersh Ipaktchian. Wardley's testimony at the hearing outlined a relationship with Mr. Ipaktchian which began in the late 1970's. In fact, Movant's Exhibit # 7 states that Wardley *"on June 20th ... contacted Gene (sic) Babilis again concerning the sale of Mullboons".* (emphasis added)

The Sales Agency Contract between the debtors and Wardley (Exhibit # 6) is dated June 22, 1989. The contract is a standard listing agreement for real estate and specifies, as part of the "boiler-plate", that the party signing the agreement agrees to pay "a commission of seven percent (7%) of such sale ... which commission unless otherwise agreed in writing, shall be due and payable on the date of closing the sale ...". Handwritten over this provision is "10", circled, and the initials "JRB", also circled.

■ In support of the application for the 10% commission, Wardley presented documentation detailing his activities on behalf of this sale (Exhibit # 7). The documenta-

tion indicates that the listing was signed June 22, 1989, and the offer was accepted July 12, 1989. The documentation includes time records of ten hours between these two dates. Under 11 U.S.C. § 327, the trustee, with the Court's approval, may employ "professional persons" such as real estate brokers. Pursuant to 11 U.S.C. § 328(a), this employment may be "on any reasonable terms and conditions ...". As directed by 11 U.S.C. § 330(a), the Court, after notice and hearing, may award "reasonable compensation" for necessary services to the estate.

■ The supervision of professional fees is essential to the operation of the bankruptcy law, integral to the bankruptcy system and required by the Bankruptcy Code. This Court believes it is duty bound to evaluate the reasonableness of professional compensation and the duty cannot be delegated. *In re Kahler,* 84 B.R. 721 (Bkrtcy.D.Colo.1988); *In re Chas. A. Stevens & Co.,* 105 B.R. 866, 870 (Bkrtcy.N.D. Ill.1989). The standard of review which the Court will employ in determining the compensation to be paid to these professionals is, by statutory doctrine, that of reasonable compensation for work actually performed.

■ Although these applicable Code sections apply primarily to attorneys and accountants seeking compensation through the Court from debtor's estates, Bankruptcy Courts have consistently required supportive documents for requests for commissions by real estate brokers and have applied the standard of "reasonable compensation" to determine the amounts to be awarded. *See In re Frigitemp Corp.,* 24 B.R. 209 (D.S.D.N.Y.1982).

■ Notwithstanding the terms of the contractual arrangement between the debtor and the professional, the fees to be paid are implicitly subject to alteration if the terms prove to be inequitable. It is for this very reason that appointed professionals are required to submit detailed applications regarding the dates, precise tasks performed and the time expended to perform those tasks, before such fees are allowed.

*In re Crouse Group, Inc.,* 75 B.R. 560 (Bkrtcy.E.D.Pa.1987).

This "reasonable standard" will be applied to the application at hand. In doing so, the Court must keep in mind the fact that Wardley had a long-term, ongoing relationship with the buyer and had attempted to negotiate a deal for the sale before the bankruptcies were even filed. For these reasons, as well as others stated below, the Court declines to award $100,000 to applicant as reasonable compensation for services to the estate. It is recognized, however, that the efforts of Wardley resulted in a sale of the property for $1,000,-000 and that compensation for this accomplishment should be "reasonable".

■ The objecting parties have indicated that a rate of between 2% and 5% would be reasonable compensation under the circumstances. In determining the proper rate of the broker's commission, the customary rates for similar services in the area is merely one element, among others, the Court may consider. *Vaniman International, Inc. v. Rick Kreindler Associates, Inc.,* 24 B.R. 207 (E.D.N.Y.1982). In addition, legislative history provides:

> In a bankruptcy case fees are not a matter for private agreement. There is an inherent public interest that must be considered in awarding fees ... compensation in private employment ... is a point of reference not a controlling determination of what shall be allowed in bankruptcy cases. House Rep. No. 95–595, 95th Cong, 2d Sess. 40, 1978 U.S.Code Cong. & Admin.News 5787, 5826.

After particularly pointing out that the list was not exhaustive, the court in *Matter of Womack, Inc.,* 1 B.R. 95 (Bkrtcy.Nev. 1979), articulated standards for determining a reasonable commission to be paid a real estate broker:

1. reasonableness of the fee, as seen in the light of what would be paid in a transaction occurring in the open market place,
2. the amount to be found in the Bankrupt's/(Debtor's) estate from which such a payment can be made,
3. the amount of time and expense put into the project by the Claimant,
4. the amount brought into the estate by the sale,
5. the difficulty of finding a buyer for the property,
6. the amount which might be left to pay off secured and general creditors after this and other administrative expenses are paid.

1 B.R. at 98.

The first factor in *Womack* is the commercial reasonableness of the fee as seen in light of what would be paid in a transaction occurring in the open marketplace. The evidence before the Court has established that for property, such as that sold here, the fee to be charged in the open marketplace in Utah ranges from a minimum of 2% to a high of 5%.

The next factor set forth in *Womack* should be viewed in conjunction with the fourth and sixth factors in determining the reasonableness of the fees requested. The amount for which the property was sold was $1,000,000. This money is the only certain asset of the estates. Payment to the realtor is an administrative expense of the sale, to be deducted from the sale's proceeds. This expense will, of course, reduce the amount available to the secured creditors of the estate. Due to the number of priority and unresolved tax claims, the possibility of return to unsecured creditors is speculative, at best. *See* Examiner's Preliminary Report and Report and Proposed Sale of Mullboons Restaurants at Trolley, Midvale and Ogden, filed August 21, 1989; Second Examiner's Report Concept Clubs, Inc., and Administrative Consolidated Cases, filed October 19, 1989.

The third and fifth factors should also be applied in conjunction with each other. In the case at hand, the property seemed to virtually sell itself. Only twenty days had elapsed from the time the listing was signed until the offer was accepted. The listing was signed on June 22, 1989, and the offer was accepted July 12, 1989. Time records, submitted by Wardley, document ten hours of activity relative to the sale. No expense has actually been documented.

**638**

The evidence confirmed there was no need to advertise or generate any expense of note. Wardley virtually had the buyer standing in readiness. In fact, Wardley and the buyer had a past relationship vis-a-vis these very properties.

■■■ The Court has been unable to determine exactly how much time was spent by Wardley. This inability arises from the fact that most entries in the documentation do not contain the time spent on the activities detailed. Those professionals, who request reimbursement for their endeavors from the debtors' estate, have the responsibility and burden of providing adequate descriptions of the services provided and the expenses incurred in order for the Court to make a determination of the reasonableness of the fees requested. *In re Malden Mills, Inc.*, 42 B.R. 476 (Bkrtcy.D. Mass.1984). It is within the Court's discretion to determine the credibility of time claimed on a particular project in the absence of contemporaneous records. *Johnson v. University Co. of Univ. of Ala. in Birmingham*, 706 F2d. 1205, 1207 (11th Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983).

In light of the foregoing, the Court finds it appropriate to award the amount of $50,-000 to Wardley for work performed on behalf of the estates. In doing so, the high commission placed before the Court by the evidence has been selected as that which would most generously compensate Wardley for the services performed.

It is therefore ORDERED that the Verified Application of Broker for Debtor for Allowance of Compensation As An Administrative Expense is approved in the amount of $50,000.