In re **RIDGEWOOD SACRAMENTO, INC., a California corporation, Debtor.**

**Bankruptcy No. 281–04449–D–11.**

United States Bankruptcy Court, E. D. California.

May 26, 1982.

**444**

John F. Stice, Sacramento, Cal., for debtor.

Linda S. Peterson, Hefner, Stark & Marois, Sacramento, Cal., for applicant, North Pac. Lumber Co.

## MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Bankruptcy Judge.

On January 27, 1982, North Pacific Lumber Company (the creditor) filed with this court an application to require the debtor-in-possession in the above-entitled bankruptcy proceedings to provide adequate assurance of future performance pursuant to 11 U.S.C. section 365. On March 3, 1982, the matter came on for hearing. After presentation of evidence, oral arguments and on oral motion by the creditor for the court to treat its claim as an expense of administration, the court took the matter under submission.

## STATEMENT OF THE FACTS

The facts which underlie the creditor's application are the following:

On November 24, 1981, Ridgewood Sacramento, Inc. (the debtor), ordered goods from the creditor on one purchase order form. After the goods were ordered, the creditor made two shipments of these goods on separate dates.

The first shipment, reflected in Invoice No. 711718, occurred on December 3, 1981, when the debtor's carrier, Zephry Factors, Inc., picked up the goods at the creditor's mill. The terms of this shipment were F.O.B. Mill.

The debtor filed its voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code on December 4, 1981.

The second shipment, reflected in Invoice No. 742847, occurred on December 9, 1981, when the debtor's carrier, Bend Building Supply, picked up the goods at the creditor's mill. The terms of this shipment were also F.O.B. Mill.

Both shipments were delivered to the debtor's subpurchaser, M & M Cupler Lumber (M & M). M & M has paid the debtor for both shipments.

## DISCUSSION

On December 4, 1981, the date that the debtor filed its voluntary petition for relief, the purchase order contract remained an executory contract. The term "executory contract" is not precisely defined in the Bankruptcy Code. However, Professor Countryman in his article entitled, *Countryman Executory Contracts In Bankruptcy: Part I*, 57 Minn. 2 Rev. 439 (1973), has authored the most exacting definition of the executory contract to date. Professor Countryman defines an executory contract as,

"... a contract under which the obligations of both the debtor and the other party are so far unperformed that the failure of either party to complete performance would constitute a material breach excusing the performance of the other."

This definition of the term "executory contract" was recently adopted by The United States Court of Appeals, Ninth Circuit, in the case of *Benevides v. Alexander,*

9 Cir., 670 F.2d 885, (1982). This court accepts the Countryman definition as expositive of the term "executory contract."

■ Applying the elements of the Countryman definition to the facts of the instant case requires a conclusion that the purchase order contract remained executory on the date that the debtor filed its voluntary petition in bankruptcy on December 4, 1981. On that date the creditor remained obligated to deliver a second shipment of goods to the debtor's carrier pursuant to the purchase order contract and the debtor remained obligated to make payment for the shipments of those goods. Failure of either party to so perform would have constituted a material breach of the contract.

■ On December 9, 1981, the debtor's carrier, Bend Building Supply, received the second shipment of goods from the creditor pursuant to the purchase order contract. This action constituted an assumption of the executory contract by the debtor while it was a debtor-in-possession under Chapter 11 of the Bankruptcy Code. *In re Steelship Corp.*, 576 F.2d 128 (8th Cir. 1978); *Brown v. Presbyterian Ministers Fund*, 484 F.2d 998 (3d Cir. 1973); *In re Huntington Limited*, 9 Cir., 654 F.2d 578, CCH Bankruptcy Law Reports, p. 79, 545.

■ 11 U.S.C. section 1107 empowers a debtor in possession with all the rights of a trustee, with certain limited exceptions inapplicable here. Thus, pursuant to 11 U.S.C. section 365, the debtor was permitted to assume the executory contract with the creditor. Since the debtor's assumption of this executory contract was an act in the ordinary course of its business, pursuant to 11 U.S.C. section 1108, the debtor was not required to obtain court approval to continue operating its business.

However, the creditor contends that in order to assume this executory contract the debtor was required by 11 U.S.C. section 365 to provide the creditor with adequate assurance of future performance. 11 U.S.C. section 365 states:

"(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

Pursuant to the language of this code section, the debtor-in-possession may assume an executory contract unless one of the exceptions is met. Sections 765 and 766 are clearly inapplicable to the facts of this case. Subsections (c) and (d) of section 365 are also inapplicable. The creditor rests its request for adequate assurance of future performance on subsection (b) of section 365.

Subsection (b) reads:

"(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

"(A) . . .

"(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default."

■ The language of this subsection as well as the legislative history of the subsection requires that the obligation be in default at the time that the trustee or the debtor-in-possession assumes the executory obligation in order for adequate assurances to be required. In this case, there is no evidence that the purchase order contract was in default at the time that the debtor accepted the second shipment of goods from the creditor. It is reasonable to assume that payment for both the first and the second shipment was not due until thirty (30) days after the first shipment was made. Thus, because the executory obligation was not in default on the date that the debtor assumed it, subsection (b) is inapplicable to the facts of this case and the debtor is not required to provide adequate assurances to the creditor.

■ However, although the debtor need not provide the creditor with adequate as-

surances of performance, the fact that the executory obligation was assumed by the debtor after the filing of the bankruptcy petition requires that the claim be treated as an expense of administration.

11 U.S.C. section 503 provides:

"(a) An entity may file a request for payment of an administrative expense.

"(b) After notice and a hearing there shall be allowed, administrative expenses other than claims allowed under section 502(f) of this title including—

"(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case: ..."

Collier on Bankruptcy, 15th Ed., at pages 503–11 and 503–12 states, "[T]he use of the word 'including' as a word of non-limitation, suggests that the enumeration by Congress in section 503(b) of what constitutes claims for administrative expenses is not necessarily exclusive and precluding."

This court agrees with the interpretation that Collier 15th has made regarding this section. In a situation such as exists here, the fact is that the creditor supplied the debtor, which was continuing to operate its business pursuant to Chapter 11, with goods which were essential to the debtor if it was to continue operating its business. The supply of goods to a Chapter 11 debtor is just as necessary to pursue the operation of the debtor's business as is the payment of wages, salaries or commissions. Thus, the creditor's claim, because it was based on a factor which was necessary for the debtor to carry on its business, must be treated as an expense of administration pursuant to 11 U.S.C. section 503(b)(1)(A).

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law. Counsel for the creditor shall prepare and submit an appropriate Order consistent with this Opinion and Decision.