CUDAHY, Circuit Judge.
 

 This appeal involves litigation expenses incurred in connection with a reorganization proceéding pending in the district court. The question before us is whether the debtors must pay the cost of court reporters, translators and interpreters hired to aid in conducting discovery on behalf of creditors. For the reasons expressed below, we vacate the order of the district court and remand the case for proceedings consistent with this opinion.
 

 I.
 

 UNR Industries, Inc. (“UNR”) and ten of its subsidiaries and affiliates filed for reorganization on July 29, 1982. An Official Committee of Unsecured Creditors (the “Committee”) was formed and, pursuant to
 
 *1137
 
 11 U.S.C. § 1103, the Committee hired Norman H. Nachman and the law firm of Nachman, Munitz & Sweig, Ltd., as its legal counsel.
 

 One of the subsidiaries, Leavitt Structural Tubing Co., (“Leavitt”) has been consistently unprofitable and, according to the creditors, a drain on the finances of UNR. Leavitt operates, on the south side of Chicago, a tubular steel mill, which it leases from Holco Corporation, a Dutch company. The Committee, seeking to halt the drain on finances caused by operation of the mill (known as the “South Plant”), applied to the bankruptcy court for an order converting Leavitt’s reorganization to a straight liquidation.
 

 In addition to the Committee’s efforts to preserve Leavitt’s assets, two of UNR’s individual creditors took steps directed at Leavitt’s relationship with Holco. Manufacturers Hanover Trust Company and Citibank, N.A. (the “Banks”), through their own counsel, Richard A. Levy and Levy & Erens, moved for an order to compel Leav-itt to reject the South Plant lease and to limit Leavitt’s rental payments to no more than the reasonable value of the use and occupancy of the South Plant premises. Part of the Banks’ theory is that Holco and Leavitt are actually partners and are not in the relationship of lessor and lessee. To enable them to present these issues to the district court,
 
 [1]
 
 the Banks sought authority to conduct discovery and this authority was eventually granted. Court reporters, translators and interpreters were hired to aid in this discovery, the costs of which totaled about $36,000. Translators were necessary because many documents were in Dutch or German. Further, because of an expedited discovery schedule, the Banks ordered daily transcription of the depositions, which proved to be quite expensive. The translators, interpreters and reporters billed Levy & Erens for their services.
 

 From what we are able to discern from the record, it appears that the Banks conducted discovery primarily on the joint venture issue and related issues which they had raised. The Committee apparently conducted its own discovery on its application to convert the case to a liquidation. The expenses at issue in this case resulted, it seems, mainly from discovery on the joint venture issue.
 

 On October 22, 1983, the Committee, through its attorneys, requested that the debtors pay the court reporters, interpreters and translators employed in the discovery. That application did not refer to any specific statutory provision requiring the debtors to make the payments but it did allege that the “Committee and the New York Banks have utilized court reporters [and translators and interpreters].” The application did not allege that the Committee — or its counsel — hired the various reporters, translators and interpreters nor did it indicate whether the Committee would be liable to pay the invoices if the debtors were not compelled to pay.
 

 On November 4, 1983, the district court ordered the debtors to make the payments. The court below found that the application “is correctly considered as brought under 11 U.S.C. § 330” and that Levy’s statement earlier that he would not present a fee application for his representation of the Banks referred only to legal services and, presumably, not to expenses. On appeal, the Committee has disavowed reliance on any provision of law except 11 U.S.C. § 330 (and the advisory committee note to a rule which refers to § 330).
 
 [2]
 
 Therefore, if
 
 *1138
 
 § 330 does not provide legal authority for the district court’s order, we shall not consider other potentially relevant provisions as support for the order.
 

 II.
 

 Section 330 of the Bankruptcy Code, 11 U.S.C. § 330, is straightforward. As it relates to this case, it allows the parties listed in 11 U.S.C. § 1103 to seek “reimbursement for actual, necessary expenses.” Before addressing the question whether the case before us involves reimbursable expenses, we find it necessary to discuss problems presented by the appellate record before us.
 

 One of these problems is that both parties have argued factual points for which there is no record support. Circuit Rule 9(c)(2) requires that all facts stated in the statement of facts must be supported by a reference to the record. Neither party in this case complied with that rule. Further, many potentially crucial factual statements made in the briefs and at oral argument are not supported by anything in the record. Both parties have made repeated assertions concerning who initiated certain discovery, who was present at depositions, who asked questions at depositions, what issues were involved in the discovery and who ordered daily or immediate copy of depositions. The parties also disagree as to the form of prior applications for reimbursement made by the Committee’s counsel. However, no evidence has been put in the record concerning who ordered copies of the depositions, not a single notice of deposition has been included in the record, not one transcript of a deposition is in the record, none of the discussed documents are in the record and none of Nachman, Munitz & Sweig’s prior applications for reimbursement are in the record. If various of the factual assertions were supported by the record, they might be dispositive. If these points are vital to the case, the outcome of this appeal might be altered by the failure to include pertinent items in the record.
 
 See Casualty Indemnity Exchange v. Village of Crete,
 
 731 F.2d 457, 460 (7th Cir.1984).
 
 [3]
 

 As noted, the Committee relies exclusively on 11 U.S.C. § 330.
 
 [4]
 
 The Committee has advanced two theories under which the debtor would be required to make the payments. Before the district court, and in its brief .on appeal, the Committee argued that § 330 provides for reimbursement of
 
 Committee
 
 expenses.
 
 [5]
 
 At oral argument, however, the Committee argued alternatively that reimbursement was proper if the expenses were incurred by the Committee’s
 
 counsel.
 
 We first address whether § 330 provides for reimbursement of Committee expenses.
 

 Section 330 provides, in pertinent part:
 

 (a) After notice ... and a hearing ... the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or
 

 to the debtor’s attorney—
 

 [[Image here]]
 

 
 *1139
 
 (2) reimbursement for actual, necessary expenses.
 

 Section 1103, in turn, authorizes the Committee, at a scheduled meeting and with court approval, to employ professional persons including “attorneys, accountants, or other agents, to represent or perform services for such committee.”
 

 Nothing on the face of § 330 or § 1103 provides for reimbursement of the Committee’s own expenses (as contrasted with reimbursement for the expenses of persons employed under § 1103).
 
 [6]
 
 However, the Committee makes two arguments in support of its contention that § 330 provides for reimbursement of the Committee’s expenses. First, the Committee relies on the Advisory Committee Note to Bankruptcy Rule 2016. Rule 2016(a) sets forth the requirements for making an application for reimbursement of expenses under § 330. The Advisory Committee Note provides that “Subdivision (a) includes within its provisions a
 
 committee."
 
 (Emphasis added). Based on this part of the Note, the Committee argues that it is entitled to reimbursement. We must reject this argument because the same Note makes it clear that “§ 330 sets forth the bases for allowing compensation.” Thus, because the substantive basis for reimbursement does not appear in § 330, the procedural rule may not properly be relied on to provide such a basis.
 

 The Committee’s second argument in support of its contention that it is entitled to reimbursement under § 330 is that § 330 was meant to carry forward provisions of prior law which allowed for committee reimbursement. The omission of the Committee itself from § 330, it is contended, is an inadvertent “defect” in the Bankruptcy Code. Several bankruptcy courts have addressed this question. For example, the bankruptcy court in
 
 In re Farm Bureau Services, Inc.,
 
 32 B.R. 69, 69-71 (Bkrtcy.E.D.Mich.1982), held that the new Bankruptcy Code did not carry through, in § 330, provisions of prior law which allowed reimbursement of Committee expenses. The court recognized that some courts have allowed the Committee to recover expenses but only under 11 U.S.C. § 503(b)(3)(D).
 
 [7]
 
 The Committee, in the case before us, has, of course, disavowed reliance on that provision. In any event, the court in
 
 Farm Bureau
 
 declined to allow reimbursement of Committee expenses because it recognized that to do so would be to “rewrite the bankruptcy legislation.”
 
 Id.
 
 at 71. Similarly, the bankruptcy court in
 
 In re Major Dynamics, Inc.,
 
 16 B.R. 279, 280-81 (Bkrtcy.S.D.Cal.1981) held that provisions of prior law which allowed Committees and their members to recover expenses were not reenacted in § 330 or any other section of the new Bankruptcy Code.
 
 Accord In re Interstate Restaurant Systems, Inc.,
 
 30 B.R. 32,
 
 reaffirmed on reconsideration,
 
 32 B.R. 103 (Bkrtcy.S.D.Fla.1983).
 

 We conclude that, as relevant to this case, section 330 provides only for reimbursement of expenses incurred by professional persons hired by the Committee with court approval pursuant to 11 U.S.C. § 1103. Thus, expenses incurred, for example, by the Committee’s counsel are chargeable to the debtor.
 
 See In re The Liberal Market, Inc.,
 
 24 B.R. 653 (Bkrtcy.S.D.Ohio 1982);
 
 In re Interstate Restaurant Systems, Inc., supra; In re Bear Lake West, Inc.,
 
 32 B.R. 272 (Bkrtcy.D.Idaho 1983). However, reimbursement of expenses of the Committee itself, or of individual members of the Committee, is not provided for in § 330.
 
 See In re Bear Lake West, Inc., supra; In re Interstate Restaurant Systems, Inc., supra; In re Major Dynamics, Inc., supra.
 

 
 *1140
 
 The Committee’s final contention, raised at oral argument, is that the expenses at issue in this ease are expenses of its attorney under § 330. If this were correct, the Committee’s application would be proper under our view of § 330. Nothing in Judge Hart’s order, however, indicates that he concluded, as a matter of fact, that the expenses were incurred by the Committee’s counsel. Nonetheless, in light of the Committee’s position at oral argument, we shall undertake a review of the record to determine if we can find adequate support for the conclusion that these expenses were incurred by the Committee’s counsel. In that respect, we believe that what we can cull from the inadequate record indicates that these expenses were actually incurred by the Banks and their counsel. In any event, we are unable to conclude, on this record, that the Committee’s counsel incurred these expenses.
 

 Important evidence supporting our view that these expenses were incurred by Levy & Erens and not by Nachman, Munitz & Sweig is that all of the invoices have been directed to Levy & Erens. None were addressed to Nachman, Munitz & Sweig. Of course, this point would not be dispositive if the law firms were working together on the discovery and the invoices were directed to only one of them. However, there is nothing before us which suggests that Nachman, Munitz & Sweig is jointly liable with Levy & Erens for any of the invoices.
 

 The record is adequate to establish that apparently all of the parties viewed the discovery on the joint venture issue as having been conducted by Levy & Erens on behalf of the Banks and not by Nachman, Munitz & Sweig on behalf of the Committee. For example, the Committee, through its counsel, repeatedly represented to the parties and to the district court that the Committee was not a party to the joint venture issue and was not playing a major role in the discovery pertaining to it. At a status hearing before Judge Hart on October 12, 1983, counsel for the Committee stated:
 

 A great deal of discovery has been taken and I believe the parties would agree that the major part of that discovery pertains to the joint venture issue.
 

 The Committee has participated in the discovery process in connection with its application to convert to Chapter 7. That participation has been
 
 quite small
 
 compared to the activity that took place in connection with the discovery on the joint venture issue.
 

 Tr. of Proceedings, Oct. 12, 1983, at 4 (emphasis added). Counsel for the Committee at that time was seeking to distinguish between the two issues (in fact, the Committee wanted separate trials on the two issues) and to make it abundantly clear that the Banks — not the Committee — were pressing the joint venture issue.' Later in that same hearing, counsel for the Committee stated that trial of the conversion issue might be simplified “if the
 
 banks
 
 were successful in the assertion of
 
 their
 
 [joint venture] position.”
 
 Id.
 
 at 6 (emphasis added). And later the same counsel said “we stated before and I will say it again now, the Committee does not consider itself a party to the joint venture issue.”
 
 Id.
 
 at 35. This same representation had in fact been made numerous times both in court and in the Committee’s answers to interrogatories from the debtors.
 

 The proceedings accompanying Levy & Erens’ initial attempt to conduct discovery also reveal that the parties and the bankruptcy court viewed the discovery on the joint venture issue as being conducted by Levy & Erens and not by counsel for the Committee. On June 6, 1983, the Banks apparently served several notices of depositions on the debtors. The debtors moved for a protective order to prohibit or delay these depositions. A hearing on the debt- or’s motion was held before Bankruptcy Judge Toles on June 10, 1983. The transcript of that hearing, which is in the record, makes clear that the discovery at issue was the Banks’ and not the Committee’s. For example, Gerald Munitz, of Nachman, Munitz & Sweig, stated, “The issues which the New York banks have
 
 *1141
 
 presented are separate and distinct matters ... [but] it is the resolution of the committee that
 
 Mr. Levy be permitted to conduct his discovery.”
 
 Tr. of Proceedings, June 10, 1983, at 30-31 (emphasis added). The district court granted the debtors a protective order delaying the depositions. At the end of the hearing, however, the attorney for the debtors, without objection from Levy or Munitz, stated, “This order does not restrain the creditors’ committee in any way from proceeding with
 
 their discovery.” Id.
 
 at 95 (emphasis added). Thus, all of the parties apparently understood that the discovery on the joint venture issue was being conducted by the Banks and not by the Committee. Had this not been the understanding, the protective order would have been without practical effect since the Committee could have proceeded with the same depositions which the Banks had been precluded from taking by Judge Toles’ order prohibiting them from proceeding with discovery.
 

 The final factor supporting our view that the expenses were not incurred by the Committee is that both the Committee’s counsel and the Banks’ counsel made representations which implied that the Banks would bear the expenses of the joint venture litigation. These representations were also made at the June 10 hearing before Judge Toles.
 

 At the hearing, Munitz, on behalf of the Committee, argued that the Banks should be allowed to conduct discovery. He stated, “If an individual committee member
 
 at its individual expense
 
 wishes to retain counsel for appropriate purposes, it surely has the right to do so. That is what has .been done here, and I respectfully submit that Mr. Levy ultimately be permitted by Court order to conduct discovery which has been requested here.”
 
 Id.
 
 at 36 (emphasis added). Second, Levy himself promised Judge Toles, “you will never get a fee application to charge this estate for what we do for those two New York City banks.”
 
 Id.
 
 at 55. The Committee attempts to counter these statements by pointing out that they refer only to attorney’s fees and not to expenses. But we do not think the distinction is sustainable. Judge Hart apparently considered only Levy’s statement to Judge Toles and concluded that the promise not to charge the estate referred only to attorney’s fees. Although we accept Judge Hart’s conclusion as far as it goes, our review of'the entire record, including in particular Munitz’ statement which contained the word “expense” rather than the word “fees,” suggests to us that the parties understood that the Banks, and only the Banks, were to bear the expense of their discovery.
 

 Thus, we are unable to conclude from the rather sketchy record that the Committee or its counsel incurred the expenses at issue in this case.
 

 III.
 

 We have determined that § 330 does not provide for reimbursement of expenses incurred by the Committee itself. Further, we note that Congress, by enacting a comprehensive reform of this nation’s bankruptcy laws, has set up a carefully articulated system of administration and distribution, to which we must faithfully adhere. Section 330 helps set the balánce between effective representation of creditors’ interests and preservation of the debtor’s estate. To safeguard this balance, and thus to advance the policies of the bankruptcy laws, we must limit the charges against debtors to those items which may be specifically squared with the terms of the section. Under the circumstances presented by this case, the debtors may not be charged with expenses of individual creditors or their counsel by the device of after-the-fact adoption by the Creditors Committee. Otherwise, individual creditors would have a blank check drawn on the debtor.
 

 We are unable, from this record, to conclude that the expenses in question were incurred by the Committee’s attorney. However, the district court may be in a better position to make this factual determination. Thus, we have concluded that the matter should be remanded to the district court for a determination as to the
 
 *1142
 
 Committee’s showing that the expenses in question are properly compensable, in accordance with the principles we have noted, as those of the Committee’s counsel.
 
 [8]
 

 Therefore, the order of the district court requiring the debtors to pay the expenses is vacated and the matter is remanded for further proceedings not inconsistent with this opinion.
 
 [9]
 

 [1]
 

 . On July 1, 1983 the district court withdrew the reference of the South Plant matters from the bankruptcy court. We understand from the briefs that the district court is still considering these questions.
 

 [2]
 

 . In its brief, the Committee characterizes several other statutes relied on by the debtors as “immaterial.” Appearing in that list is 28 U.S.C. § 1291, the statute which confers upon us appellate jurisdiction over final decisions of the district court. The Committee, however, does not argue that we lack jurisdiction over this appeal. This reference, however, suggests that we should discuss our own jurisdiction since the reorganization proceedings are still pending in the district court. Because the district court's order is a final decision requiring the payment of these expenses, we find that we have jurisdiction under 28 U.S.C. § 1291.
 
 See In re Yerma
 
 
 *1138
 

 kov,
 
 718 F.2d 1465, 1469 (9th Cir.1983) (final orders to pay are appealable while interim orders are not).
 

 [3]
 

 . In this situation, we could, as we have the power to do, order supplementation of the record.
 
 See
 
 Fed.R.App.P. 10(e). We do not, however, propose to assume the responsibility for assembling the record that Rule 10 places primarily on the parties. Our view might be different if we had raised the points mentioned above on our own or if our view of the case had suddenly made relevant what had previously seemed irrelevant. Here, however, where both parties rely heavily on material they have chosen not to include in the record, our role should be more limited. Accordingly, we shall simply disregard any factual assertions not supported by the record.
 

 [4]
 

 . Thus, we express no opinion on whether these expenses would be chargeable to the debtor under some other theory. The Committee has waived any other basis for recovery.
 

 [5]
 

 . For example, in its response to the debtors’ motion to reconsider in the district court, the Committee argued that “the Committee’s application ... is brought pursuant to 11 U.S.C. § 330(a)(2) as a request for reimbursement of
 
 its
 
 actual, necessary expenses.” (Emphasis added).
 

 [6]
 

 .
 
 The Committee does not contend that the reporters, translators and interpreters were hired by the Committee at a scheduled meeting or that court approval was sought, as provided by § 1103. Therefore, the reporters, translators and interpreters are not themselves professional persons entitled to compensation under § 330.
 

 [7]
 

 . 11 U.S.C. § 503(b)(3)(D) provides for reimbursement for the expenses of various parties (including a committee) when the party "makfes] a substantial contribution” to the estate.
 

 [8]
 

 . Apparently, some of the discovery in question was relevant to the Committee’s application to liquidate Leavitt. We believe this fact cannot be accorded much weight, however, in view of the Committee's consistent refusal to associate itself with "joint venture” discovery. Further, the Committee has not suggested that the expenses be apportioned between the parties according to the issues involved in the discovery.
 

 [9]
 

 . If it is determined that the expenses are recoverable, we leave it to the district court to decide whether, under § 330, these expenses were “actual” and "necessary.” In its order, the district court wrote ”[a]bsent a question as to the validity of the amounts sought, the Debtor is directed to make the following payments....” It is unclear whether the district court was deciding that these expenses were "necessary.” In this court, the debtors have contended that it was unnecessary to order daily transcription of depositions and overtime work by translators. The district court’s order does not indicate whether it found “necessary” the increased costs associated with the daily transcriptions and translations. We note that, even if no party below objected to the amounts in question, § 330 imposes a duty on the court to assess the reasonableness of the expenses.
 
 See In re The Liberal Market, Inc.,
 
 24 B.R. at 657.
 
 See also York Intern. Building, Inc. v. Chaney,
 
 527 F.2d 1061, 1068-69 (9th Cir.1975) (construing prior law).