**In re The GEORGE WORTHINGTON CO., Debtor.**

Nos. 89–3279, 89–3286.

United States Court of Appeals, Sixth Circuit.

Argued July 24, 1990.

Decided Sept. 12, 1990.

Rehearing Granted, Opinion Vacated Nov. 30, 1990.

Alan R. Lepene, Thompson, Hine & Flory, Cleveland, Ohio, for debtor.

Kathryn L. Roseen (argued), Keck, Mahin & Cate, Chicago, Ill., for plaintiff-appellant Official Creditors' Committee of George Worthington Co.

Before JONES and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

The appellant, the official unsecured creditors' committee of the George Worthington Company, appeals the district court's denial of its application for reimbursement of administrative expenses from the bankruptcy estate.

**1.** Section 1102(a)(1) states:
  As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of

I.

The debtor, The George Worthington Company, filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Code") on September 24, 1986. Pursuant to section 1102(a)(1) of the Code,[1] the United States Bankruptcy Court appointed an official committee of creditors (the "Committee") holding unsecured claims against The George Worthington Company. The Committee consisted of twelve members from nine states and represented unsecured claims of over $13 million.

On May 18, 1987, the Committee submitted an interim application for reimbursement of administrative expenses to the bankruptcy court, requesting reimbursement of expenses totaling $12,050.94. There was no objection to the application by the debtor. On August 14, 1987, 76 B.R. 605, the bankruptcy court entered an interlocutory order denying the Committee's interim application. The bankruptcy court held that the Bankruptcy Code does not authorize reimbursement of administrative expenses to a creditors' committee appointed pursuant to section 1102 of the Code (a "statutory committee"). On August 24, 1987, the Committee sought immediate review of the interlocutory order. On November 18, 1987, Chief Judge Battisti granted the Committee's motion for leave to appeal. The Committee filed a notice of appeal docketed as case No. C87–3394, requesting that the district court reverse the bankruptcy court's interlocutory order.

In July 1988, the Committee submitted a final application for reimbursement of expenses to the bankruptcy court, seeking reimbursement in the amount of $4,676.16. The final application also requested that the bankruptcy court reconsider its interlocutory order and award reimbursement of both interim and final committee expenses totaling $16,727.10. The bankruptcy court denied the final application for administrative expenses and refused to reconsider its interlocutory order. On Sep-

  creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

tember 29, 1988, the Committee filed a notice of appeal of the bankruptcy court's order. On February 27, 1989, District Judge Alice M. Batchelder entered an order in Case No. C87–3394, which denied the Committee's motion for leave to appeal the interlocutory order previously granted by Judge Battisti. On March 27, 1989, the Committee filed a notice of appeal from Judge Batchelder's February 27, 1989 order. The appeal from the district court's February 27, 1989 order has been designated by this court as case No. 89–3279.

On February 28, 1989, the district court entered an order affirming the bankruptcy court's denial of the Committee's final application for administrative expenses and affirming the bankruptcy court's denial of reconsideration of its interlocutory order. The Committee filed a timely notice of appeal designated in this court as case No. 89–3286.

## II.

■ Appellant first contends that the district court violated the doctrine of law of the case in its February 27, 1989 order by denying the Committee's motion for leave to appeal the bankruptcy court's interlocutory order, which had previously been granted by Judge Battisti. Appellant argues that the well established doctrine of law of the case provides that once an issue has been decided it cannot be relitigated. Because Judge Battisti granted the motion to appeal the interlocutory order, appellant argues that it was error for Judge Batchelder to deny it.

We find no merit in this argument. This court has stated:

A wide degree of freedom is often appropriate when the same question is presented to different judges of a single district court. To be sure, unfettered reexamination would unduly encourage efforts to shop rulings from one judge to another, and might seem an undesirable denial of comity between colleagues. Substantial freedom is desirable nonetheless, particularly since continued proceedings may often provide a much improved foundation for deciding the same issue.

*Cale v. Johnson,* 861 F.2d 943, 947 (6th Cir.1988) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4478 (1981)). In the present case, the district court in its order of February 27, 1989 did not abuse its discretion by denying the Committee's leave to appeal the bankruptcy court's interlocutory order, even though leave to appeal had previously been granted. The court had before it an interlocutory order denying an interim application for administrative expenses and a final order denying a final application for administrative expenses. In order to avoid piecemeal litigation, the district court denied appeal of the interlocutory order and ruled on the merits of the final order. The purpose of the doctrine of law of the case is to promote judicial comity, the judicial system's interest in finality, and the efficient administration of cases. These purposes were furthered, not violated, by the district court's February 27, 1989 order. For this reason, the district court's order of February 27, 1989 denying the motion for leave to appeal the bankruptcy court's interlocutory order is hereby affirmed.

## III.

■ Appellant next argues that the district court erred in denying the Committee's final application for administrative expenses in its February 28, 1989 order.

There is a very definite split of authority on the issue of whether an official creditors' committee, which must be appointed in a Chapter 11 reorganization pursuant to section 1102(a)(1) of the Code, is entitled to reimbursement of administrative expenses from the debtor's estate. The Bankruptcy Reform Act of 1978, Pub.L. 95–598, U.S. Code Cong. & Admin.News 1978, p. 5787, modified the Bankruptcy Act of 1898 and is codified as Title 11 of the U.S.Code. Under the Bankruptcy Act of 1898 (the "Act"), the expenses of a creditors' committee could be recovered from the estate in Chapter 11 cases under Rule 11–29(c) of the Rules of Bankruptcy Procedure. However, there is no express provision in the current Code or in the new Rules of Bankruptcy Procedure that were promulgated to implement the Code which carries forward the provisions of prior law that allowed for a statutory committee's reimbursement.

Section 1102 of the Code mandates that a committee of creditors holding unsecured claims be appointed by the bankruptcy trustee in a Chapter 11 reorganization. Under section 1103, the committee may retain professional persons, including attorneys, accountants, and agents, with the court's approval. Compensation for these professionals is authorized under Section 330. Section 503(b) of the Code deals with six categories of administrative expenses which can be paid from the debtor's estate to various entities. However, in this list, there is no express provision permitting reimbursement of administrative expenses to a committee appointed pursuant to section 1102 of the Code.

The bankruptcy courts are divided in their resolution of this dilemma; a majority have allowed reimbursement, but other courts have refused reimbursement because of the lack of specific statutory authority in the Code. No court of appeals has previously addressed the issue of whether such reimbursement may be allowed. In *In re UNR Industries, Inc.*, 736 F.2d 1136 (7th Cir.1984), the seventh circuit addressed a related issue—whether members of a statutory committee's litigation expenses are reimbursable under section 330 of the Code. The court held that the litigation expenses undertaken by two members of the committee could not be reimbursed under section 330, which deals with compensation and reimbursement for professional persons employed by the committee as a whole. The court found that these two members of the committee, who had employed their own attorneys and incurred discovery expenses, were not acting on behalf of the committee as a whole, and therefore denied their application for reimbursement. *Id.* at 1141. The court expressly disavowed any discussion of section 503(b) of the Code. *Id.* at 1139.

## A.

Faced with the Code's silence concerning the payment of a statutory committee's administrative expenses, which seems inconsistent with the greater role given to creditors' committees under the Code,

many bankruptcy courts have relied on the legislative history of section 503(b) to argue that Congress intended to continue the prior law under the Act, which permitted committee reimbursement. *See In re Jennings, Inc.*, 96 B.R. 500, 504 (E.D.Pa.1989) ("the legislative history of Section 503 also fails to suggest that Congress intended to change the policy of reimbursement which existed before the Code's enactment"); *In re Aviation Technical Support, Inc.*, 72 B.R. 32, 34 (Bankr.W.D.Texas 1987) ("the [legislative] history is clear: such expenses were considered as allowable claims"); *In re General Oil Distrib., Inc.*, 51 B.R. 794, 805 (Bankr.E.D.N.Y.1985) ("If anything, differences between the Act and the Code would suggest that Congress intended the practice to continue under the Code, and that perhaps the practice is essential to maintaining the scheme envisioned by the Code.")

A brief review of the legislative history is necessary to sum up the arguments of these courts. With the promulgation of the new bankruptcy rules in 1983, Rule 2016 became effective. Rule 2016(a) sets forth the procedure for obtaining court approval of requests for compensation and reimbursement of expenses under section 330. The Advisory Committee Note to Rule 2016(a) states that "subdivision (a) includes within its provisions a *committee*" (emphasis added). Three courts have held that expenses incurred by a statutory committee may be reimbursed, if shown to be actual and necessary, in light of Rule 2016(a) and the Advisory Committee Note. *In re Toy & Sports Warehouse, Inc.*, 38 B.R. 646, 648 (Bankr.S.D.N.Y.1984); *In re Malden Mills, Inc.*, 42 B.R. 476, 488 (Bankr.D.Mass.1984); *In re GHR Energy Corp.*, 35 B.R. 539, 542 (Bankr.D.Mass. 1983). In these cases, reimbursement was allowed as supportive of the policy of encouraging active committee participation in the reorganization process. However, as the seventh circuit in *In re UNR Industries* pointed out, the Advisory Note indicates that Rule 2016(a) merely sets forth the requirements for making an application for reimbursement of expenses under section 330. 736 F.2d at 1139. Section 330

provides no substantive basis for reimbursement to the members of an official creditors' committee, but only for the compensation of professionals employed by the committee. "Thus, because the substantive basis for reimbursement does not appear in section 330, the procedural rule may not properly be relied on to provide such a basis." *Id.* We agree with the seventh circuit in *UNR Industries* that Bankruptcy Rule 2016(a) does not provide authority for reimbursement of administrative expenses to an official creditors' committee.

Other courts have relied upon proposed amendments to the Code in holding that Congress intended that a statutory committee's expenses should be paid. *In re Windsor Comm. Group, Inc.,* 54 B.R. 504, 507 (Bankr.E.D.Pa.1985); *In re Labine,* 42 B.R. 883, 887 (Bankr.E.D.Mich.1984). In 1981, Congress attempted to enact the Technical Amendments Act of 1981. The senate bill would have amended 11 U.S.C. § 503(b), which does not include a provision for the reimbursement of a section 1102 committee, by changing the period at the end of the final paragraph (6) to a semi-colon and adding thereafter the word "and." A new final paragraph (paragraph (7)) was to be added after the "and," stating:

> (7) The actual, necessary expenses, other than compensation and reimbursement specified in paragraph (2) of this subsection, incurred by a committee appointed under section 1102 of this title.

The proposed amendment thus would have provided authority for the reimbursement of a statutory committee's administrative expenses. The House Report on the proposed Technical Amendments Act stated that it "adds a new paragraph providing for administrative expense treatment of expenses incurred by individuals in connection with their official responsibilities as members of a creditors' committee." H.R. Rep. No. 1195, 96th Cong. 2d Sess. 13 (1980). The Senate Report stated that the amendment "makes technical corrections to make clear that the expenses of a creditors' committee in a reorganization case are allowable as administrative expenses."

S.Rep. No. 150, 97th Cong. 1st Sess. 13 (1980). However, due to other considerations upon which Congress was unable to agree, no statutory amendments were enacted in 1981.

In July 1984, Congress apparently attempted to amend § 503(b), but failed to do so. On July 10, 1984, the President signed into law the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353. Section 446(7) of the Act states: "Section 503(b) of title 11 of the United States Code is amended ... in paragraph (6), by striking out the period and inserting in lieu thereof '; and.' " The court in *In re Labine,* 42 B.R. at 887, concluded that Congress meant to include paragraph (7), which in prior versions of the proposed amendment had followed the "and." The *Labine* court held that because of this alleged omission, reimbursement should be allowed. However, in the most recent amendments to the Code, the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986, Pub.L. 99–554, section 283(g)(3) deletes the "and" and the ";" at the end of paragraph (6) of section 503(b). The meaningless dangling conjunction at the end of the final paragraph (6) was taken out, and no paragraph (7) was added. This change supports the conclusion that Congress considered, but rejected, the addition of a provision that would expressly allow the reimbursement of a statutory committee's administrative expenses.

One court has held that a basis for reimbursement can be found in an exchange between Senators Dole and DeConcini recorded in the Congressional Record on Friday, October 5, 1984. *In re Aviation Technical Support, Inc.,* 72 B.R. at 34. The exchange indicates that these two senators believed that administrative expenses were payable and should continue to be payable.

> Mr. DeCONCINI: On another matter, confusion has arisen concerning the payment of necessary expenses incurred by a creditors' committee appointed under section 1102. Although there is not a specific provision providing for this type of expense in the Code, this has long been the practice and the obvious equitable thing to do. Would you agree that this type of expense should be paid

and that nothing in the recently enacted Bankruptcy Amendments and Federal Judgeship Act would suggest a different construction?

Mr. DOLE: I absolutely agree. It is essential for the orderly and professional administration of bankruptcy cases, that creditors and creditors' committees that incur reasonable and necessary expenses in their service on creditors' committees be reimbursed. Nothing in BAFJA was meant to change the well-settled practice of paying necessary expenses of creditors while serving on creditors' committees.

130 Cong.Rec. § 13771 (daily ed. Oct. 5, 1984). However, as the court in *In re Global Int'l Airways Corp.*, 45 B.R. 258, 261 (Bankr.W.D.Mo.1984) correctly points out, "[t]his exchange ... does not resolve the problem because ... [the] problem about paying these expenses did not arise with the 1984 amendments; it came into being with the enactment of the Bankruptcy Reform Act (the Code) and was compounded by adoption of the new rules[,]" which did not include a provision for the payment of a statutory committee's administrative expenses. Moreover, the Supreme Court has stated, "post-passage remarks of legislators, however explicit, cannot serve to change the legislative intent of Congress expressed before the Act's passage. Such statements 'represent only the personal views of these legislators, since the statements were [made] after passage of the Act.'" *Blanchette v. Connecticut General Ins. Corp.*, 419 U.S. 102, 132, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974) (citation omitted).

We conclude that rather than providing authority for the reimbursement of a statutory committee's administrative expenses, the legislative history of section 503(b) indicates that, for whatever reason, Congress has not explicitly granted the Bankruptcy Court the authority to allow for the reimbursement of such expenses. Provisions of prior law under the Bankruptcy Act of 1898, which explicitly allowed statutory committees to recover administrative expenses, were not reenacted in any section of the Bankruptcy Reform Act of 1978, the new bankruptcy rules, or in subsequent amendments to the Code. Even though the legislative history indicates that Congress may have made an aborted attempt to explicitly allow for the payment of such expenses, the hard truth is that all attempts have failed and at present the Code provides no explicit authorization for the payment of such expenses. Rather than attempting to legislate from the bench on the basis of amendments which were never enacted into the Code, this court must examine the law as it is presently stated.

### B.

The only reference in the Code concerning reimbursement of creditors' committees is found in section 503(b)(3)(D), which states that a bankruptcy court may allow as an administrative expense the actual, necessary expenses of a "creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders *other than a committee appointed under Section 1102 of this title*, in making a substantial contribution in a case under Chapter 9 or 11 of this title...." (emphasis added).

Some courts have read the italicized phrase as words of prohibition, which state emphatically that reimbursement of the administrative expenses of an official committee is not allowed. *In re Air Haiti*, 46 B.R. 539, 541 (Bankr.S.D.Fla.1985); *In re Lyons Mach. Co., Inc.*, 28 B.R. 600, 602 (Bankr.E.D.Ark.1983); *In re Grynberg*, 19 B.R. 621, 622 (Bankr.D.Colo.1982). This conclusion is reached by reading § 503(b)(3)(D) to mean that the actual and necessary expenses of a creditor, an indenture trustee, or an unofficial committee representing creditors or equity security holders may be allowed as administrative expenses if a substantial contribution is made, but the actual and necessary expenses of a committee appointed under § 1102 may not be allowed.

Other courts have concluded that these "are not words of prohibition but simply part of the definition of an unofficial committee." *In re GHR Energy Corp.*, 35 B.R. at 542; *Accord In re Jennings, Inc.*, 96 B.R. at 501; *In re Aviation Technical*

*Support Inc.,* 72 B.R. at 34; *In re Malden Mills, Inc.,* 42 B.R. at 488.

The court in *In re Global Int'l Airways Corp.* reasoned:

> The provisions of Section 503(b)(3)(D) ... fall into place as language enlarging those parties who may be reimbursed if they make a "substantial contribution in a case under chapter ... 11." There is nothing in Section 503(b)(3)(D) that compels the reading that it bars reimbursement to appointed committees. Rather this reading establishes a two tier test: one for official committees and another for volunteer committees in terms of qualifying for reimbursement. An official committee is reimbursed if it performs its statutory duties. A volunteer committee is reimbursed if it makes a substantial contribution.

45 B.R. at 261. The *Global* court concluded that section 503(b)(3)(D), instead of precluding reimbursement to statutory committees, merely establishes the tougher "substantial contribution" standard for reimbursement of nonstatutory committees. *Id.*

The court in *In re GHR Energy Corp.* held that the phrase "other than a committee appointed under § 1102" was "a longhand expression for a voluntary, unofficial committee." 35 B.R. at 541. The *GHR Energy* court found that its view of the language was supported by the form of the previously discussed Technical Amendments Act of 1981, which proposed to add a new paragraph (paragraph (7)) authorizing reimbursement to statutory committees, rather than deleting the exclusionary phrase "other than a committee appointed under § 1102" found in paragraph (3). The court reasoned that if the phrase in paragraph (3) were intended to prohibit reimbursement of a § 1102 committee's expenses, the technical amendment simply

would have deleted the exclusionary words in paragraph (3). *Id.*

We find that the phrase at issue in § 503(b)(3)(D) was meant to include a class not otherwise formerly deemed to be entitled to reimbursement, in other words, was meant to define an unofficial committee, rather than to exclude an official committee. The notes of the Committee on the Judiciary, Senate Report No. 95–989, U.S. Code Cong. & Admin.News 1978, p. 5787, indicate that the words "other than a committee appointed under § 1102" modify the preceding phrase, "a committee representing creditors," rather than the word "creditor" at the beginning of the sentence. The words at issue state that a committee, which is not officially appointed, may receive reimbursement for incurred expenses if it makes a substantial contribution to the reorganization. Under this interpretation, the language is relatively clear; it permits certain creditors, indenture trustees, or unofficial committees, as opposed to official committees, to receive as administrative expenses their actual, necessary expenses for a substantial contribution to a case under Chapter 9 or Chapter 11.

It follows from this interpretation of the language of 503(b)(3)(D) that this section cannot be a source of authority for permitting the reimbursement of statutory committees. *In re Evans Prod. Co.,* 62 B.R. 579, 582 (S.D.Fla.1986); *In re Automotive Nat'l Brands, Inc.,* 65 B.R. 412, 414 (Bankr.W.D.Pa.1986). Only a creditor or unofficial committee making a substantial contribution may be reimbursed. This section thus does not provide authorization to pay routine administrative expenses of official creditors' committees.[2]

### C.

If section 503(b)(3)(D) does not apply to official creditors' committees, the only other possible source of authority in the Code for the reimbursement of their administra-

---

2. Some courts have stayed within the confines of 503(b)(3)(D) and held that an individual member of an official creditors' committee, who establishes that he has made a substantial contribution to the reorganization, may be reimbursed as a "creditor" making a substantial contribution. *In re Lyons Mach. Co., Inc.,* 28 B.R. at 601; *In re Grynberg,* 19 B.R. at 623–24; *In re Farm Bureau Services, Inc.,* 32 B.R. 69, 71 (E.D. Mich.1982); *but see In re Major Dynamics, Inc.,*

tive expenses is found in section 503(b) or section 503(b)(1)(A), which state:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

Many courts have held that this section should be construed broadly in order to provide reimbursement to official creditors' committees, which is necessary to effectuate the policies underlying the statutory scheme for reorganization found in the Code. *In re Jennings, Inc.*, 96 B.R. at 503; *In re Evans Prod. Co.*, 62 B.R. at 582; *In re Kaiser Steel Corp.*, 74 B.R. 885, 889 (Bankr.D.Colo.1987); *In re Aviation Technical Support, Inc.*, 72 B.R. at 34; *In re Northeast Dairy Coop. Federation, Inc.*, 76 B.R. 914, 916 (Bankr.N.D.N.Y.1987); *In re White Motor Credit Corp.*, 50 B.R. 885, 892 (Bankr.N.D.Ohio 1985); *In re Global Int'l Airways Corp.*, 45 B.R. at 261; *In re Ridgewood Sacramento, Inc.*, 20 B.R. 443, 446 (Bankr.E.D.Cal.1982).

Courts that have found authority to reimburse an official creditors' committee under these sections fall into two groups. Under the first line of cases, the reasoning is as follows. Section 503(b) is not comprehensive and exclusive. The items of reimbursable expenses expressly recognized in the section are described following the word "including." As stated in section 102(3) of the Code, "including" is not a word of limitation. Consequently, the omission of a description of a statutory committee's expenses does not mean that they cannot be allowed. Congress assumed that the word "including" allowed courts to continue to permit reimbursement of administrative expenses to statutory committees as was permitted under the prior Act. *In re White*

*Motor Credit Corp.*, 50 B.R. at 892; *In re Labine*, 42 B.R. at 886; *In re Ridgewood Sacramento, Inc.*, 20 B.R. at 446; *In re Fireside Office Supply, Inc.*, 17 B.R. 43, 45 (Bankr.D.Minn.1981).

The second line of cases presume that the statutory duties imposed on an official unsecured creditors' committee by section 1103 are essential to the "preservation of the estate" within the meaning of 503(b)(1)(A) and authorize reimbursement on this basis. *In re Jennings, Inc.*, 96 B.R. at 504; *In re Evans Products Co.*, 62 B.R. at 583; *In re Kaiser Steel Corp.*, 74 B.R. at 889; *In re Global Int'l Airways Corp.*, 45 B.R. at 261.

Courts which uphold an expansive reading of Section 503(b) and 503(b)(1)(A) maintain that reimbursement to official creditors' committees is necessary to promote their cooperation and participation in the reorganization process—an underlying design of the Code.

[U]nder the scheme adopted by the Bankruptcy Reform Act of 1978, i.e., with the bankruptcy judge removed from active participation in the case and the preference for leaving the debtor in possession, a § 1102 committee has a more important role in terms of monitoring the debtor's business life and developing the terms of the plan of reorganization. [The court does] not believe that it is sensible to conclude that Congress mandated a more critical role for official committees and at the same time chose to change the existing rule and bar members from obtaining reimbursement for the expenses incurred in performing their duties.

*In re GHR Energy Corp.*, 35 B.R. at 543. *See also In re Kaiser Steel Corp.*, 74 B.R. at 890 ("the committee's role can be wholly impaired if creditors, already financially injured by the debtor's inability to pay, must personally finance the expenses which are necessary to active participation"); *In re*

---

16 B.R. 279, 280 (Bankr.S.D.Cal.1981) ("It would indeed be anomalous to allow individuals on a committee to recover costs out of the estate when the Code does not provide such reimbursement to the creditors' committee itself.")

In the present case, the application for reimbursement was filed by the Committee, not by its individual members, and there is no showing

that any individual member made a particular "substantial contribution" to the reorganization that went beyond the committees' performance as a whole. Therefore, the issue of whether a creditor, who has made a substantial contribution and is also a member of an official creditors' committee, may recover expenses is not before this court.

*Toy and Sports Warehouse, Inc.*, 38 B.R. at 648 ("participation by individual creditors as members of an official creditors' committee should not be chilled by requiring them to finance their travel and out of pocket expenses incurred in attending official creditors' committee meetings").

Other courts have found that logic and equity, as well as policy considerations, support their interpretation of the Code. The court in *In re Jennings, Inc.* stated:

> The more restrictive reading of Section 503(b)(3)(D) creates the anomalous situation in which creditors' committees which are appointed by and assist the bankruptcy court—no matter how much they contribute to the case—cannot be reimbursed for their expenses, while "unofficial" ("unappointed") committees who make a substantial contribution to the case can be reimbursed.... The effect of such an inconsistency would be to promote a shift away from the nonreimbursable statutory committee to the fully recoverable voluntary committee, thereby rendering meaningless almost the entire statutory mechanism which Congress explicitly provided for in Chapter 11 cases.

96 B.R. at 502 (citation omitted). *Accord In re Northeast Dairy Coop. Federation, Inc.*, 76 B.R. at 915; *In re General Oil Distrib., Inc.*, 51 B.R. at 805. The rationale underlying these cases is that the court must reconsider a statute that could result in the undermining of active creditor involvement in a chapter 11 case and that reimbursement is needed to foster .committee participation in reorganization.

We believe, however, that this conclusion is merely speculative. It can also be argued that a creditor's motivation in participating in a debtor's reorganization is based upon an expectation of financial reward and will not be substantially diminished by the prospect of having to perform and absorb the cost of some administrative functions by acting as a member of the official creditors' committee. *See In re Kingsway Purchasing, Inc.*, 69 B.R. 713, 716 (Bankr. E.D.Mich.1987). A creditor is free to accept or decline appointment to the statutory committee and may be motivated by self-interest to participate whether or not administrative expenses are reimbursable.

■ Other courts have strictly construed section 503(b)(1)(A) and have held that it does not provide clear and specific authority for the reimbursement of a statutory committee's expenses. *In re Automotive Nat'l Brands, Inc.*, 65 B.R. at 415; *In re Air Haiti*, 46 B.R. at 541; *In re Interstate Restaurant Systems, Inc.* 30 B.R. 32, 33 (Bankr.S.D.Fla.1983); *In re Major Dynamics, Inc.*, 16 B.R. 279, 280 (Bankr.S.D.Cal. 1981). These courts refuse to base reimbursement on the presumption that an official committee's performance of its statutory duties "preserves the estate." As the court in *In re Windsor Comm. Group, Inc.* stated:

> We do not agree with those cases holding that members of a creditors' committee may receive reimbursement from the estate for their out-of-pocket expenses relating to the performance of their duties as part of the committee. Certainly, Congress could have envisioned that acceptance of a position on a creditors' committee by a creditor located some distance from the debtor's place of business would entail travel expenses. However, the Code does not contain a provision for reimbursement of such expenses. To add a new layer of administrative expense to each Chapter 11 case in which a creditors' committee has been appointed, without express Congressional authorization, would appear to be improvident.

54 B.R. at 509. Moreover, as the *Windsor* court pointed out, the administrative expenses of an official creditors' committee are expenses similar to those incurred by an ordinary litigant.

> It has long been the general rule in bankruptcy cases that creditors bear their own costs when seeking to collect on a debt owed by a bankrupt individual or corporation. Legal services which are provided solely for a client-as-creditor, such as those rendered in prosecuting a creditor's claim, are not compensable from the estate. The cost of litigating a relief from stay motion, for example, is only reimbursable from estate funds if the loan agreement with the debtor expressly provides that collection costs, in-

cluding attorneys' fees, shall become part of the oversecured creditor's claim. 11 U.S.C. § 506(b). In effect, it is in the creditor's best interest to generally assist and foster its position, which is little different than a party to an ordinary law suit contributing time and assistance to counsel, which expenses cannot be compensated.

*Id.* (citation omitted).[3]

Furthermore, an analysis of section 1103 does not support the presumption that the committee's statutory duties necessarily "preserve the estate" within the meaning of 503(b)(1)(A). Section 1103 of the Code defines the powers and duties of a committee appointed under section 1102. A committee may (1) consult with the trustee or debtor in possession concerning the administration of the case; (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; (3) participate in the formulation of a plan ...; (4) request the appointment of a trustee or examiner under section 1104 ...; and (5) perform such other services as are in the interest of those represented. 11 U.S.C. § 1103(c)(1)–(5). Under this section a distinction can be made between activities undertaken solely for the private interest of the creditor and activities which also benefit the reorganization process. We believe that to authorize reimbursement of a statutory committee's administrative expenses would invite a new layer of additional expense to the already burgeoning costs of administering a Chapter 11 case.

Those courts that are unable to understand why Congress may have decided to permit administrative expense recovery for nonstatutory committees and to deny recovery for committees appointed under section 1102 focus only on section 503(b)(3)(D) and overlook the overall scheme concerning official and unofficial committees set out in the Code. Section 1103 permits official creditors' committees to employ profession-

al persons, including attorneys, accountants, or other agents, to represent or perform services for the committee. Section 330 allows compensation for these professionals from the estate without a showing that the committee has made a substantial contribution to the estate. Evidence of a "substantial contribution" is required, on the other hand, before an unofficial committee may receive reimbursement of any expenses. §§ 503(b)(3)(D) and 504(b)(4). Section 503(b) enumerates a list of entities whose actual and necessary administrative expenses can be reimbursed. The list includes a paragraph concerning unofficial committees, but does not include one concerning official committees. It appears that by deciding to allow official committees to employ professional persons, whose expenses may be reimbursed from the estate, but not to allow the reimbursement of the official committees' routine administrative expenses, Congress may have struck a compromise.

■ We believe that clear and specific authority in the Bankruptcy Code is necessary to allow compensatory disbursements from estate proceeds. *See In re Capital Chip Co.,* 19 B.R. 262, 263 (Bankr.D.Hawaii 1982) ("The general policy of the [Bankruptcy Reform] Act denies compensation unless expressly provided.") The correct rule of interpretation for the applicable Code provisions has been expressed by the only court of appeals addressing the subject of reimbursement of statutory committee members. The seventh circuit in *In re UNR Industries, Inc.,* in denying reimbursement based on section 330, stated:

> [W]e note that Congress, by enacting a comprehensive reform of this nation's bankruptcy laws, has set up a carefully articulated system of administration and distribution, to which we must faithfully adhere.... To safeguard this balance [between effective representation of creditors' interests and preservation of the debtor's estate], and thus to advance the policies of the bankruptcy laws, we must limit the charges against debtors to those items which may be specifically squared with the terms of the section.

---

**3.** The *Windsor* court concluded that reimbursement is allowed under section 503(b)(1)(A) only if the court determines on a case-by-case basis

that the actions of the committee were beneficial to the estate and not undertaken solely for the private interests of the creditors. *Id.* at 510.

736 F.2d at 1141. There is no explicit statutory basis for the payment of the administrative expenses of an official creditors' committee in the Code. The decision as to what participants in the bankruptcy process may receive compensation is in the hands of Congress, and, for whatever reason Congress acted or failed to act, we believe that the court must faithfully adhere to the balance between the creditors' interests and the preservation of the debtor's estate established by Congress in the Code. If active participation by official creditors' committees in the reorganization process needs greater encouragement by the reimbursement of administrative expenses, the remedy should be supplied by Congress, not the court.

For these reasons, the decision of the district court to deny appellant's final application for the reimbursement of administrative expenses is hereby affirmed.

NATHANIEL R. JONES, Circuit Judge, dissenting.

The majority takes great pains to state that it is not "legislating from the bench" and that any remedy for reimbursement of the expenses of the official creditors committees "should be supplied by Congress, not the court." However, when interpreting a Bankruptcy Code which is silent with respect to the reimbursement of such expenses, a court must formulate a rule which it believes most comports with the intent of Congress. It is a "red herring" and perhaps a bit disingenuous to suggest that allowance of reimbursement of expenses by official creditors committees is "legislating" while denial of such expenses is "interpreting." The real question is which is the better interpretation.

I believe that the proper interpretation is allowance of reimbursement under section 503(b)(1)(A). The longstanding practice of such reimbursement under the old Bankruptcy Act, and the floor debate suggesting that the reimbursement continue, is indicative of Congressional intent. After all, we must interpret the Code not in a vacuum, but in the context of the many years of experience under the Act. Official committees had been reimbursed for years. Thus, it is an anomalous interpretation to suggest that the unofficial committees could now receive reimbursement under the Code for "substantial contribution" to the estate, while official committees no longer could receive any reimbursement. In addition, the use of the word "including" in section 503(b)(1)(A), which is not a word of limitation, gives some flexibility to bankruptcy courts in deciding which expenses are "actual, necessary costs and expenses of preserving the estate." The majority's reading of the Code is contrary to the best indication of Congressional intent that we can find—Congress' construction of "including" as "not limiting" in section 102(3) of the Code. What other purpose did Congress have in mind in using the word "including" but to give leeway to courts in allowing "actual and necessary expenses"?

The majority notes that "[t]he decision as to what participants in the bankruptcy process may receive compensation is in the hands of Congress ..." The truth of this proposition is not in doubt. However, when Congress fails to explicitly either allow and disallow a specific compensation, it is up to the courts to interpret the law. In my opinion, a broad interpretation of the law is more in line with Congressional intent and the plain meaning of the word "including" in section 503(b)(1)(A).

### ORDER

Nov. 30, 1990.

Before: JONES and MILBURN, Circuit Judges; and CONTIE, Senior Circuit Judge.

The petition of appellant, the official unsecured creditors' committee of the George Worthington Co., for a rehearing is granted. The court will make final disposition of the case without reargument. The panel's opinion of September 12, 1990, affirming the district court's denial of reimbursement of administrative expenses to the official unsecured creditors' committee of the George Worthington Co., is hereby vacated.